Verified Correct Copy of Original 2/13/2026.

FILED

FEB 04 2026

Circuit Court
Multnomah County, Oregon

BARRY WASHINGTON
PO BOX 1572
Portland, OR 97207
971.266.1857
BARRY WASHINGTON, IN PRO PER

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

| | |
|---|---|
| **BARRY WASHINGTON**<br><br>Plaintiff,<br><br>vs.<br><br>**CITY OF BEAVERTON,**<br>(an Oregon municipal corporation;<br>**OFFICER JASON FARLOW**<br>(Beaverton Police).<br>**OFFICER COCHRANE**<br>(Beaverton Police),<br>**MULTNOMAH COUNTY,**<br>(a political subdivision of the State of Oregon);<br>**SHALAE MOORE,**<br>(Department of Community Justice);<br>**JIM STEVENS,**<br>(Department of Community Justice)<br>        Defendants | Case No.: 26CV08085<br><br>**COMPLAINT**<br><br>(42 U.S.C. § 1983; First Amendment Retaliation; Fourth Amendment Unreasonable Seizure; Fourteenth Amendment Due Process; Malicious Prosecution; Monell; Declaratory and Injunctive Relief)<br>**JURY TRIAL DEMANDED**<br><br>*Filing Fee Authority: ORS 21.135*<br>*Prayer Amount: Money damages in an amount not less than $750,000*<br>*Arbitration: Not subject to mandatory arbitration (amount in controversy exceeds $50,000; UTCR 13.190)* |

I.
INTRODUCTION

1.    My name is Barry Washington. This case is about what happened when government employees used supervision rules and police power as a shortcut—first to control me, then to arrest me, and then to justify the arrest with an accusation that never became a filed criminal case but was still used against me.

- 1 -
COMPLAINT FOR DAMAGES

Verified Correct Copy of Original 2/13/2026.

2. I bring this case under 42 U.S.C. § 1983, that law allows suit against state and local officials who misuse government power and violate basic rights.

## II.
## NO CONCESSIONS ABOUT "SUPERVISION STATUS"

3. Defendants treated me as if I was under "local control" post-prison supervision. I do not concede that the supervision status, time calculations, or any "time-stopping" actions Defendants used were lawful. I am not asking this court in this civil case to undo a criminal judgment or sentence. I reserve my right to challenge the underlying supervision status and any time-stopping actions in the proper forum.

## III.
## JURISDICTION AND VENUE

4. This court can hear claims brought under 42 U.S.C. § 1983.

5. Venue is proper in Multnomah County because the supervision decisions described here were made and carried out through Multnomah County's community corrections operation, and those decisions led directly to the Beaverton arrest and what followed.

## IV.
## PARTIES

6. Plaintiff: Barry Washington, lives in Oregon

7. Defendant City of Beaverton: responsible for how Beaverton police officers are trained, supervised, and allowed to operate.

8. Defendant Multnomah County: responsible for how its community corrections operation is trained, supervised, and allowed to operate (often called "DCJ").

9. Defendant Shalae Moore: a community corrections officer. I sue her personally for what she did.

- 2 -
COMPLAINT FOR DAMAGES

Verified Correct Copy of Original 2/13/2026._

10. Defendant Jim Stevens: Moore's supervisor during the key events. I sue him personally for approving, allowing, or refusing to stop the conduct described here.

11. Defendant Officer Jason Farlow: a Beaverton police officer. I sue him personally for what he did during the arrest and related events.

12. Defendant Officer Cochrane: a Beaverton police officer who responded and assisted. I sue her personally for her role in the arrest/custody process.

13. Additional participants: I also allege that other officers and supervisors were involved. I will amend to name them when records identify them.

## V.
## FACTS

**(a)    Supervision Turned into Pressure and Control**

14. After Moore took over my supervision, the tone changed quickly. The supervision became more demanding and more punitive without a real, concrete reason tied to my actual behavior. I went from not having to check in much to being required to call or text repeatedly. This was not framed as support. It was framed as pressure and control.

15. Moore repeatedly pushed for jail time when she made recommendations. From what I observed, those recommendations required supervisory approval; that supervisor was James (Jim) Stevens.

16. Moore repeatedly pushed substance-use treatment as the center of her control strategy, even though she could not point to individualized facts showing illegal drug use or a history that would justify that level of coercion.

17. Moore used my relationship with my child as leverage. I have documentation showing she refused to adjust contact restrictions so I could have contact with my son. This was treated as a bargaining chip.

- 3 -
COMPLAINT FOR DAMAGES

Verified Correct Copy of Original 2/13/2026.

18. I complained to oversight bodies, including DPSST, and I sought protective relief. I did this because the supervision felt unjustified according to justice reinvestment program and other administrative standards.

19. After I complained, the supervision did not become more reasonable. It became more hostile and more aggressive. The timing matters because it shows motive: when I used my right to complain, the response was punishment.

**(Legal anchor, explained: the First Amendment protects the right to complain to government oversight without being punished for it.)**

**(b)     The Administrative Arrest Order (issued 1/9/24)**

20. On January 9, 2024, an administrative arrest order was issued. Moore and Stevens relied on stories that were false, careless, or both, including treatment attendance issues that were used as a weapon to escalate supervision, and a claim that I "moved without permission," based on a roommate's spite report.

21. The "moved without permission" narrative was not neutrally checked and is counterintuitive to my receiving the card left on the door notifying me that Ms. Moore had been to the residence. It was used as fuel to escalate control and justify the arrest order.

22. Moore also represented that she had a "warrant." It was not a judge-signed warrant after neutral review. It was an administrative arrest order created through community corrections channels.

23. Calling it a "warrant" mattered. It created the impression a judge had reviewed facts and found strong reasons to arrest me. That impression was false. The Beaverton Police officer said that I had a warrant for firing a weapon in public.

- 4 -
COMPLAINT FOR DAMAGES

Verified Correct Copy of Original 2/13/2026.

(c)    **The Beaverton Arrest (2/4/24)**

24.    On February 4, 2024, Beaverton police arrested me based on the January 9, 2024 administrative arrest order. Officer Jason Farlow initiated contact and the arrest. Officer Cochrane responded and assisted. This did not start because of a new crime or violation I committed in front of them. The arrest happened because the police relied on an internal administrative order created by another agency after an investigation into my affiliations.

25.    The arrest escalated into force and restraint. I was treated as a problem to be controlled, not as a person whose liberty was being taken based on verified facts.

**(Legal anchor, explained: the Fourth Amendment requires a solid factual reason and a fair process for taking someone into custody. Officials cannot use shortcuts to bypass that protection.)**

(d)    **The "Resisting Arrest": No Filed Complaint, but Still Causing Damage**

26.    After the arrest, the officers accused me of "resisting arrest."

27.    No criminal complaint was filed against me for resisting arrest ("no complaint"). In other words, that accusation did not become a criminal case that moved forward in court.

28.    Even though no complaint was filed, the "resisting arrest" accusation still showed up later as part of supervision paperwork—specifically, in a recommendation to extend "active supervision," where it was used as substantiation to supposedly extend the active supervision period.

29.    My position is simple: when officers accuse someone of a crime and then that accusation is not filed as a case, it should not be used as a backdoor reason to extend supervision. It functions like punishment without a fair process.

**(Legal anchor, explained: "malicious prosecution" is the wrongful use of criminal charges to punish or justify an arrest. Here, the accusation was made, but the case did not even get filed. That still matters because the accusation was used as a weapon after the fact.)**

- 5 -
COMPLAINT FOR DAMAGES

Verified Correct Copy of Original 2/13/2026.

(e)    **After Jail: Stevens Approves Family Contact**

30.    After I served 30 days in jail, the very next day Jim Stevens approved contact so I could exercise my parental rights.

31.    That approval was granted even though I had not completed substance-use treatment.

32.    This matters because substance-use treatment was repeatedly treated by Moore as the main reason for interfering with my ability to have contact with my child. Stevens' approval confirms that the earlier leverage was not about safety; it was about control.

(f)    **April 2024: Transfer Request, New Officer, And "No Roi on File**

33.    On April 5, 2024, Jim Stevens submitted a transfer request.

34.    On or about April 1, 2024, Molly Bineham (who later became the supervising officer after Stevens) received a substance-use treatment referral involving Lifeworks NW.

35.    Bineham asked whether there was a Release of Information(ROI) on file. Stevens replied that he could not locate one.

36.    This is important because it shows serious recordkeeping problems about whether a valid ROI existed at all, which matters to how treatment information was obtained and used against me; and It links directly to the Lifeworks NW matter (Washington v. Lifeworks NW, Case No. 26CV00025).

37.    The presence or absence of a valid ROI is central to how treatment information was handled, I am not asking this court to decide the Lifeworks case here. I am explaining why the "ROI / treatment information" story in this case is unreliable and was used as a tool of control and the perpetuated harms reach.

38.    This cost me real things

    (a)    loss of freedom;

- 6 -<br>COMPLAINT FOR DAMAGES

Verified Correct Copy of Original 2/13/2026.

(b)    humiliation and emotional distress;

(c)    disruption to work and income;

(d)    damage to my reputation; harm to my family relationship, including interference with my relationship with my son;

(e)    legal burdens and lasting consequences from accusations used against me even when no case was filed.

## VI.
## CLAIMS

### COUNT 1 — PUNISHED FOR COMPLAINING (FIRST AMENDMENT)

39.    I repeat paragraphs 1-38.

40.    I complained to oversight bodies and sought help through lawful channels.

41.    Moore and Stevens responded by escalating control and pushing an arrest-order process that predictably led to the January 9 administrative arrest order and the February 4 Beaverton arrest. The purpose and effect of their actions was to punish me for complaining and to discourage future complaints.

42.    Multnomah County is responsible because this happened through its supervision system, approvals, and failure to correct obvious misuse of power.

### COUNT 2 — UNREASONABLE ARREST (FOURTH AMENDMENT)

43.    I repeat paragraphs 1-42. Moore and Stevens caused the arrest order to be issued and used through false or careless statements and without fair checking of the facts.

44.    Officer Farlow and Officer Cochrane arrested me based on that administrative order and escalated the contact into a forceful seizure.

45.    City of Beaverton is responsible because the arrest and force occurred through its policing practices, training, supervision, and what it tolerates or approves.

- 7 -
COMPLAINT FOR DAMAGES

Verified Correct Copy of Original 2/13/2026.

46.    53. Multnomah County is responsible because the arrest order was created and used through its supervision system and approvals.

## COUNT 3 — UNFAIR USE OF GOVERNMENT POWER (DUE PROCESS / BASIC FAIRNESS)

47.    I repeat paragraphs 1-46. Using family contact as leverage, relying on a spite report without neutral checking, calling an administrative arrest order a "warrant," and using an unfiled accusation as justification to extend active supervision are not fair government practices. This conduct predictably caused loss of liberty and real harm.

48.    Multnomah County is responsible because this flowed from supervision practices and supervisory approvals that allowed this kind of misuse.

## COUNT 4 — WRONGFUL USE OF A CRIMINAL ACCUSATION AS A WEAPON
## (MALICIOUS PROSECUTION / WRONGFUL CRIMINAL PROCESS)

49.    I repeat paragraphs 1-48.

50.    Beaverton officers accused me of resisting arrest and used that accusation as a justification tool, even though no complaint was filed.

51.    The accusation was then used in supervision paperwork to support extending "active supervision." This is wrongful use of criminal process in substance: it punishes and stigmatizes without a fair case being filed, and it adds consequences beyond the arrest itself.

52.    City of Beaverton is responsible because this occurred through reporting and referral practices, supervision, and what it tolerates or approves.

## COUNT 5 — CITY/COUNTY RESPONSIBILITY FOR PATTERNS AND FAILURES
## (MUNICIPAL LIABILITY)

53.    I repeat paragraphs 1-52. These events were not random. They were made possible by how the City and County operate: how they train people, what they tolerate, what they approve, and what they fail to correct.

- 8 -
COMPLAINT FOR DAMAGES

Verified Correct Copy of Original 2/13/2026.

54. Those failures made the harm to me foreseeable.

## VII
## PRAYER FOR RELIEF

55. Compensatory, including economic and noneconomic damages.

56. Punitive damages against the individual defendants because this was not a good-faith mistake; it was reckless, retaliatory, and harmful. A declaration that what happened violated my rights. Narrowly tailored orders that prevent the same kind of misuse from happening again, including: correcting records that contain false predicates and false "justifications"; and preventing retaliation through arrest-order shortcuts and unfiled accusations. Costs and attorney fees as allowed by law

**JURY TRIAL DEMAND**

DATED this 3rd day of February 2026

/s/ Barry Washington

BARRY WASHINGTON

In Pro Per

- 9 -
COMPLAINT FOR DAMAGES